HAYNES AND BOONE, LLP
Tamara I. Devitt/Bar No. 209683
  tamara.devitt@haynesboone.com
Matthew Costello/Bar No. 295062
  matthew.costello@haynesboone.com
18100 Von Karman Ave., Suite 750
Irvine, California 92612
Telephone: (949) 202-3000
Fax: (949) 202-3001

Attorneys for Defendant
COGENT COMMUNICATIONS, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOAN AMBROSIA, JANE LACAP, KEITH SWICK, BILL CHAN, COSMIN BANU, SHAHID RAHMATULLAH, DANA ROGERS, TONY TRINH, CHRISTIAN HALLORAN, NOVELETT WITT, ART BAIMKIN, ANGELITO MUYOT JR., JASON RUIS, KESHAV LILBURN KAMATH, PEET SAPSIN, and ALICIA ERBY<br><br>        Plaintiffs,<br><br>    vs.<br><br>COGENT COMMUNICATIONS, INC.,<br><br>       Defendant. | Case No. 3:14-cv-02182-EDL RS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT COGENT COMMUNICATIONS, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>*Assigned to: The Hon. Richard Seeborg*<br><br>Complaint Filed: May 12, 2014<br><br>**Hearing**<br>**Date:**     **August 14, 2014**<br>**Time:**     **1:30 p.m.**<br>**Courtroom:**   **3** |

# TABLE OF CONTENTS

**Page**

I.    STATEMENT OF THE ISSUES ................................................................. 1

II.   INTRODUCTION ...................................................................................... 1

III.  STATEMENT OF FACTS ......................................................................... 2

    A.  The *Lagos* Court's Order to Decertify ............................................... 2

    B.  Post-*Lagos* Lawsuits, Including the Instant Action ........................... 4

IV.   ARGUMENT .............................................................................................. 5

    A.  Legal Standard on Rule 12(c) Motion for Judgment on the Pleadings. ..................... 5

    B.  Plaintiffs' Collective and Class Action Claims are Barred by the Doctrine of Collateral Estoppel and Should be Dismissed Without Leave to Amend. ................. 5

        1.  The issues decided in *Lagos* are substantially identical to the issues Plaintiffs seek to be relitigated in this lawsuit. ................. 7

            a.  The issue of collective action certification under the FLSA has already been decided by the court in *Lagos*. ..................... 7

            b.  The decertification order in *Lagos* also precludes Plaintiffs' Rule 23 class action claims. ..................... 11

        2.  The *Lagos* decertification order is a final judgment on the merits. ................. 13

        3.  The Plaintiffs in the instant action are in privity with the *Lagos* plaintiffs. ..... 14

        4.  Plaintiffs cannot avoid the collateral estoppel bar. ........................................ 16

        5.  Public policy considerations weigh in favor of giving the *Lagos* decision preclusive effect. ..................... 18

V.    CONCLUSION .......................................................................................... 19

# TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                                    <u>**Page**</u>

*Allen v. McCurry,*
   449 U.S. 90 (1980)................................................................................................ 6

*Alpert's Newspaper Delivery Inc. v. N.Y. Times Co.,*
   876 F.2d 266 (2d Cir. 1989)................................................................................ 14

*Alvarez v. May Dep't Stores,*
   143 Cal. App. 4th 1223 (2006) ................................................................. 6, 10, 18

*American Fabrics, Inc. v. L & L Textiles, Inc.,*
   754 F.2d 1524 (9th Cir. 1985) ............................................................................ 13

*Anyare v. Wells Fargo, Co.,*
   No. 09-C-2769, 2010 U.S. Dist. LEXIS 29759 (N.D. Ill. Mar. 29, 2010)............... 17

*Anyere et al. v. Wells Fargo Co.,*
   No. 1:2009-cv-02769 (N.D. Ill.) (filed May 5, 2009).......................................... 16

*Babineau v. Fed. Express Corp.,*
   No. 08-21428, 2008 U.S. Dist. LEXIS 109500 (S.D. Fla. Oct. 2, 2008) .................. 6

*Branch, et al. v. Cogent Communications, Inc.,*
   No. 14-CV-3551 (S.D.N.Y) (filed May 16, 2014).................................................. 4

*Breakstone v. Caterpillar, Inc.,*
   No. 09-23324, 2010 U.S. Dist. LEXIS 142220 (S.D. Fl. May 26, 2010).................. 6

*In re Bridgestone/Firestone Inc. Tires Prods.,*
   333 F.3d 763 (7th Cir. 2003) ................................................................................. 6

*Castle v. Wells Fargo Financial, Inc.,*
   No. C 06-4347 SI, 2008 U.S. Dist. LEXIS 106703 (N.D. Cal. Feb. 20, 2008) ....... 17

*Clark v. Wells Fargo Fin., Inc.,*
   No. 1:08CV343 (M.D.N.C.) (filed May 22, 2008) ............................................. 16

*Cuartas, et al. v. Cogent Communications, Inc.,*
   No. 1:14CV459 JCC/TRJ (S.D. Fla.) (filed Apr. 22, 2014) ................................... 4

*In re Dalkin Shield Punitive Damages Litig.,*
   613 F. Supp. 1112 (E.D. Va. 1985) ....................................................................... 6

*Deposit Guar. Nat'l Bank v. Roper,*
   445 U.S. 326 (1980).......................................................................................... 14

*Disimone v. Browner,*
   121 F.3d 1262 (9th Cir. 1997) ............................................................................ 18

*Dizon v. Wells Fargo Fin., Inc.,*
   No. 2:08cv2435-PSG-PJW (C.D. Cal.) (filed April 14, 2008)............................. 16

*Duran v. U.S. Bank Nat'l Ass'n,*
   59 Cal. 4th 1 (2014) ............................................................................................. 9

*Ferris v. Cuevas,*
   118 F.3d 122 (2d Cir. 1997).............................................................................. 6, 7

*Fleming v. Pickard,*
   581 F.3d 922 (9th Cir. 2009) ................................................................................ 5

**Cases** **Page**

*Frosini v. Bridgestone Firestone N. Am. Tire, LLC,*
    No. CV 05-0578 CAS (RZx), 2007 U.S. Dist. LEXIS 73767 (C.D. Cal. Aug. 24, 2007) 6, 9, 10

*Gen. Tel. Co. of S.W. v. Falcon,*
    457 U. S. 147 (1982)...................................................................................... 11

*In re Gottheiner,*
    703 F.2d 1136 (9th Cir. 1983) ........................................................................ 14

*Hal Roach Studios v. Richard Feiner & Co.,*
    896 F.2d 1542 (9th Cir. 1990) .......................................................................... 5

*Hanna v. Plumer,*
    380 U.S. 460 (1965)........................................................................................ 19

*Hardy v. County of El Dorado*
    No. Civ. S-07-0799 RRB EFB, 2008 U.S. Dist. LEXIS 6417 (E.D. Cal. Jan. 28, 2008).......... 5

*Harris v. Vector Mktg. Corp.,*
    716 F. Supp. 2d 835 (N.D. Cal. 2010) ................................................ 7, 8, 11, 18

*Harris v. Vector Mktg. Corp.,*
    753 F. Supp. 2d 996, 1003 (N.D. Cal. 2010) ....................................................11

*Hill v. R+L Carriers, Inc.,*
    690 F. Supp. 2d 1001 (N.D. Cal. 2010) ........................................................... 11

*Hyrdonautics v. Filmtec Corp.,*
    204 F.3d 880 (9th Cir. 2000) ............................................................................ 6

*Johnson v. GlaxoSmithKline, Inc.,*
    166 Cal. App. 4th 1497 (2008) .........................................................................7

*Jones, et al. v. Cogent Communications, Inc.,*
    No. 1:14-cv-00675-ESH (D.D.C) (filed Apr. 22, 2014) ....................................... 4

*Kirkland v. Wells Fargo Fin., Inc.,*
    No. 1:08-CV-1640-TWT (N.D. Ga.) (filed May 5, 2008)................................... 16

*L-7 Designs, Inc. v. Old Navy, LLC,*
    647 F.3d 419 (2d Cir. 2011)............................................................................. 5

*Lagos, et al. v. Cogent Communications, Inc.,*
    No. H-11-4523 (filed Dec. 21, 2011)..................................................... passim

*Luben Indus., Inc. v. United States,*
    707 F.2d 1037 (9th Cir. 1983) ........................................................................ 13

*Mauro v. Fed. Express Corp.,*
    No. CV 08-8526, 2009 U.S. Dist. LEXIS 59954 (C.D. Cal. June 18, 2009)................... passim

*Miller Brewing Co. v. Jos. Schlitz Brewing Co.,*
    605 F.2d 990 (7th Cir. 1979) .......................................................................... 13

*Molski v. Eos Estate Winery,*
    No. CV 03-5880-GAF, 2005 U.S. Dist. LEXIS 39936 (C.D. Cal. July 14, 2005)................... 19

*Montana v. United States,*
    440 U.S. 147 (1979)........................................................................................ 18

*Moore v. Kroger Co.,*
    2014 U.S. Dist. LEXIS 26377 (N.D. Cal. Feb. 28, 2014) ..................................... 5

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983)............................................................................................ 19

*Murray v. Sears, Roebuck & Co.,*
    No. 09-05744 CW, 2010 U.S. Dist. LEXIS 83284 (N.D. Cal. July 21, 2010) ............. 14, 15, 16

iii

**Cases**    **Page**

*Myers v. Hertz Corp.*,
  No. 02-CV-4325 (BMC) (MLO), 2007 U.S. Dist. LEXIS 53572 (E.D.N.Y July 24,
  2007)............................................................................................................................ 11,12

*Salgado v. Wells Fargo Fin., Inc.*,
  No. CIV. 08-0795 FCD KJM (E.D. Cal.) (filed April 14, 2008)............................................ 16

*In re Schimmels*,
  127 F.3d 875 (9th Cir. 1997) ........................................................................................... 14

*Scott v. Kuhlmann*,
  746 F.2d 1377 (9th Cir. 1984) ........................................................................................... 5

*Shaw v. Hahn*,
  56 F.3d 1128 (9th Cir. 1995) ............................................................................................. 16

*Szittai v. Wells Fargo Fin., Inc.*,
  No. 5:08-CV-1379 (N.D. Ohio) (filed June 6, 2008).......................................................... 16

*Tahoe-Sierra Pres. Council, Inc.v. Tahoe Reg'l Planning Agency*,
  322 F.3d 1064 (9th Cir. 2003) ........................................................................................... 14

*Taylor v. Sturgell*,
  128 S. Ct. 2161 (2008)........................................................................................................ 15

*Thompson v. County of Franklin*,
  15 F.3d 245 (2d Cir. 1994).................................................................................................... 5

*United States v. Stauffer Chem. Co.*,
  464 U.S. 165 (1984)............................................................................................................... 6

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) .......................................................................................................... 11

*Wellens v. Daiichi Sankyo Inc.*,
  No. C-13-00581 DMR, 2014 U.S. Dist. LEXIS 50727 (N.D. Cal. Apr. 11, 2014).................. 8

*Whitt v. Wells Fargo Fin., Inc.*,
  No. 2:08-CV-1903-PMD (D.S.C.) (filed May 14, 2008)........................................................ 16


**Statutes**

29 U.S.C. § 216(b) ............................................................................................................ 1, 7, 15
California Business and Professions Code § 17200 ............................................................ 13
California Labor Code § 202 ................................................................................................ 13
California Labor Code § 203 ................................................................................................ 13


**Other**

Restatement (Second) of Judgments § 13 (1982) ................................................................ 13

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT COGENT
COMMUNICATIONS, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS**
CASE NO. 3:14-cv-02182-EDL RS

1  **I.      STATEMENT OF THE ISSUES**

2          1.      Whether Plaintiffs' collective action claims brought pursuant to 29 U.S.C. § 216(b)

3  fail as a matter of law because they are barred by the doctrine of collateral estoppel.

4          2.      Whether Plaintiffs' class action claims brought pursuant to Rule 23 of the Federal

5  Rules of Civil Procedure fail as a matter of law because they are barred by the doctrine of

6  collateral estoppel.

7  **II.     INTRODUCTION**

8          Plaintiffs seek to have this Court do what another district court has already refused to do:

9  certify a class of Defendant Cogent Communications, Inc.'s ("Cogent") former Global Account

10  Managers ("GAMs") and Regional Account Managers ("RAMs").  Plaintiffs' theory of liability

11  in this class action is identical to the theory alleged in the defective collective action—that

12  Plaintiffs are misclassified as exempt outside sales representatives and owed unpaid overtime.

13  As discussed more fully below, Plaintiffs should be collaterally estopped from pressing their

14  collective and class action claims in this action because it has already been decided that such a

15  class is not viable.

16          On March 12, 2014, in *Lagos, et al. v. Cogent Communications, Inc.*, No. H-11-4523

17  (filed Dec. 21, 2011)  ("*Lagos*"), Judge Vanessa D. Gilmore of the United States District Court

18  for the Southern District of Texas granted Cogent's motion to decertify a Fair Labor Standards

19  Act ("FLSA") collective action, finding that: (1) the issue of whether the *Lagos* plaintiffs were

20  exempt or non-exempt employees "***must be determined on an individualized basis***"; (2) the

21  outside sales exemption defense asserted by Cogent is a "***highly individualized defense***"

22  requiring a jury to determine how many hours "***each individual plaintiff***" spent outside the

23  office; and (3) "it would be ***impossible*** for the jury to make a blanket determination concerning

24  the FLSA exempt status of the entire class of Plaintiffs" without "dozens of mini-trials."

25          Exactly two months later, lead counsel for the *Lagos* plaintiffs filed this suit on behalf of

26  former Cogent GAMs and RAMs, most of whom had previously filed consents to join the *Lagos*

27  collective action.  Plaintiffs assert the same FLSA claim for unpaid overtime as was asserted in

28

1

1  *Lagos* on behalf of a statewide putative collective action class and assert state law claims on

2  behalf of a putative Federal Rule of Civil Procedure ("Rule") 23 class. In doing so, Plaintiffs

3  apparently believe they are free to ignore Judge Gilmore's explicit ruling that it would be

4  ***impossible*** for a jury to determine the exempt status of an entire class without "dozens of mini-

5  trials." Plaintiffs are wrong. Because the propriety of class treatment for Plaintiffs' claims has

6  already been conclusively adjudicated in *Lagos*, the doctrine of collateral estoppel precludes

7  Plaintiffs from relitigating the issue of class certification. Accordingly, Cogent requests that this

8  Court dismiss Plaintiffs' collective action and class action causes of action with prejudice and

9  require Plaintiffs to pursue their claims individually.

10  **III.    STATEMENT OF FACTS**

11      **A.    The *Lagos* Court's Order to Decertify**

12      In *Lagos*, on December 21, 2011, plaintiffs filed suit, individually and on behalf of a

13  proposed nationwide collective action class, claiming that Cogent failed to pay overtime wages

14  in compliance with the FLSA. (Defendant Cogent Communications, Inc.'s Request for Judicial

15  Notice in Support of Motion for Judgment on the Pleadings ("RJN"), Ex. A, ¶ 1.) In a

16  November 14, 2012 order, the Texas district court conditionally certified a nationwide collective

17  action class of:

18          **"[a]ll current and former Global Account Managers and Regional Account**
        **Managers, employed by COGENT COMMUNICATIONS, Inc. between**
19          **December 21, 2008 to the present, who worked over 40 hours in a work week."**

20

21  (RJN, Ex. B, at 20.) On November 21, 2013, after substantial discovery, Cogent moved to

22  decertify the collective action on grounds that plaintiffs failed to demonstrate that they were

23  similarly situated to the putative collective action class they sought to represent. (RJN, Ex. C.)

24      On March 12, 2014, the Texas district court granted Cogent's Motion to Decertify the

25  Collective Action. (*See* RJN, Ex. D, at 7–25.) The court found that, due to plaintiffs' varying

26  hours of weekly outside sales activity, "a reasonable jury could find some Plaintiffs in [*Lagos*] to

27  be exempt while others are not exempt. Any factual determination of this issue would require

28

2

1   the jury to make an exemption determination for **each individual Plaintiff**." (*Id.* at 14–15

2   (emphasis added).)

3       The court further noted that plaintiffs failed to allege a company-wide policy governing

4   how GAMs and RAMs spend their time or uniformity in job duties. (*Id.* at 15–17.) Indeed, the

5   court stressed that plaintiffs *themselves* disclaimed the importance of a company-wide policy

6   when they asked the court to look to plaintiffs' day-to-day work activities rather than their job

7   description or what Cogent intended its GAMs and RAMs to do. (*Id.* at 17.) The court also

8   found that GAMs' and RAMs' discretion in determining the amount of time to allocate to

9   outside and inside sales militated against certification. (*Id.* at 19.)

10      Based on plaintiffs' varied testimony, the court in *Lagos* found "it would be **impossible**

11  for the jury to make a blanket determination concerning the FLSA exempt status of the entire

12  class of Plaintiffs" without "dozens of mini-trials." (*Id.* (emphasis added).) Moreover, the court

13  emphasized that the outside sales exemption defense alleged by Cogent to plaintiffs' FLSA

14  claims would necessitate highly individualized fact-finding, requiring the jury "to determine how

15  many hours per week **each individual Plaintiff** worked outside the office and how important that

16  work was." (*Id.* at 20–21 (emphasis added).) The court in *Lagos* made it evidently clear that

17  "the ultimate issues of whether Plaintiffs were properly classified **must be determined on an**

18  **individual basis**." (*Id.* at 23 (emphasis added).)

19      Accordingly, the court dismissed all claims alleged on behalf of all opt-in plaintiffs

20  without prejudice and directed that the *Lagos* action proceed solely on behalf of the named

21  plaintiffs. (*Id.* at 25.) Following the *Lagos* court's order to decertify the collective action,

22  named plaintiffs filed a motion for leave to file a second amended complaint under Rule 20(a)(1)

23  to join the claims of five additional plaintiffs. (RJN, Ex. E, at 2.) These proposed new plaintiffs

24  were formerly employed at Cogent's Houston office and worked as RAMs. (*Id.* at 3.) The

25  Texas district court denied plaintiffs' motion, finding that because the proposed new plaintiffs—

26  like the named plaintiffs—reported a variety of outside hours worked, joinder would not

27  facilitate judicial economy and different proof would be required for plaintiffs' individual claims.

28

(*See id.* at 5–8.)  In ruling against the *Lagos* plaintiffs, the court echoed its key finding from the previous decertification order—namely, "[b]ecause of the disparities in Plaintiffs' testimony regarding outside work, even if all eight Plaintiffs testified, a jury would be likely to make blanket determinations about the applicability of the outside sales exemption instead of determining whether each individual Plaintiff is exempt."  (*Id.* at 7.)

## B.    Post-*Lagos* Lawsuits, Including the Instant Action

After the Southern District of Texas court denied certification of the proposed nationwide collective action, counsel for the *Lagos* plaintiffs filed five spin-off lawsuits throughout the country, with each lawsuit alleging FLSA violations and/or state law violations specific to a particular geographical area in which Cogent had or has sales offices.  The named plaintiffs in all five cases are former or current Cogent employees, most of whom opted into the *Lagos* action but whom the court ruled were not similarly situated to one another.[1]

On May 12, 2014, Plaintiffs Joan Ambrosio, Jane LaCap, Keith Swick, Bill Chan, Cosmin Banu, Shahid Rahmatullah, Dana Rogers, Tony Trinh, Christian Halloran, Novelett Witt, Art Baimkin, Angelito Muyot, Jr., Jason Ruis, Keshav Lilburn Kamath, Peet Sapsin, and Alicia Erby, as purported class representatives, filed the Complaint in this case against Cogent. (Complaint ¶ 4–20.)  Each of these named Plaintiffs worked as either a GAM or RAM for Cogent and all but Chan and Ruis filed consents to join the collective action in *Lagos*.  (*See id.*; RJN, Exs. F, G, H, I, J, K.)  Here, Plaintiffs seek to recover unpaid overtime under the FLSA and California law on behalf of the following collective class:

> **"All account managers who have worked for Defendant in California and were not paid overtime at any time during the period from four years prior to the filing of the original complaint in this action through the date of final judgment."**

(Complaint ¶ 22.)

---

[1] The four other *Lagos* spin-off cases are: *Cuartas, et al. v. Cogent Communications, Inc.*, No. 1:14CV459 JCC/TRJ (S.D. Fla.) (filed Apr. 22, 2014); *Jones, et al. v. Cogent Communications, Inc.*, No. 1:14-cv-00675-ESH (D.D.C) (filed Apr. 22, 2014); *Allen, et al. v. Cogent Communications, Inc.*, No. 1:14-cv-00459-JCC-TRJ (E.D. Va.) (filed Apr. 25, 2014); and *Branch, et al. v. Cogent Communications, Inc.*, No. 14-CV-3551 (S.D.N.Y) (filed May 16, 2014).

4

1

## IV.   ARGUMENT

2

### A.   Legal Standard on Rule 12(c) Motion for Judgment on the Pleadings.

3

After pleadings are closed, any party may move for judgment on the pleadings.  Fed. R.

4

Civ. P. 12(c).  Judgment on the pleadings under Rule 12(c) is appropriate if, assuming all facts

5

are true and inferences construed in favor of the non-moving party, the moving party is entitled

6

to judgment as a matter of law.  *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).  A

7

motion for judgment on the pleadings is equivalent to a Rule 12(b)(6) motion to dismiss for

8

failure to state a claim upon which relief can be granted and the standard of review is the same.

9

*Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990).  On a Rule

10

12(c) motion, the court may consider the complaint and answer, any exhibits attached thereto,

11

and any matter of which the court can take judicial notice pursuant to Rule 201 of the Federal

12

Rules of Evidence.  *Moore v. Kroger Co.*, No. C-13-04171 DMR, 2014 U.S. Dist. LEXIS 26377,

13

at *6 (N.D. Cal. Feb. 28, 2014) (citing *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422

14

(2d Cir. 2011)).  Finally, the doctrine of collateral estoppel may be raised via a motion to dismiss

15

under Rule 12(b)(6), and thus, may also be raised via a motion for judgment on the pleadings

16

under Rule 12(c).  *See Hardy v. County of El Dorado*, No. Civ. S-07-0799 RRB EFB, 2008 U.S.

17

Dist. LEXIS 6417, at *14 (E.D. Cal. Jan. 28, 2008); *see also Scott v. Kuhlmann*, 746 F.2d 1377,

18

1378 (9th Cir. 1984); *Thompson v. County of Franklin*, 15 F.3d 245, 253 (2d Cir. 1994).

19

### B.   Plaintiffs' Collective and Class Action Claims are Barred by the Doctrine of Collateral Estoppel and Should be Dismissed Without Leave to Amend.

20

21

The doctrine of collateral estoppel bars Plaintiffs' collective action and class action

22

claims.  The Texas district court's order to decertify the collective action in *Lagos* clearly

23

decided the issue of class certification in favor of Cogent and that court's ruling has preclusive

24

effect in this case.  Cogent therefore requests that this Court apply the doctrine of collateral

25

estoppel to dismiss Plaintiffs' FLSA collective action claims and Rule 23 class action claims

26

with prejudice.

27

Collateral estoppel, also known as issue preclusion, applies if the party seeking to enforce

28

5

1  it establishes that: (1) the issue necessarily decided at the previous proceeding is identical to the

2  one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the

3  merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity

4  with a party at the first proceeding. *Hyrdonautics v. Filmtec Corp.*, 204 F.3d 880, 885 (9th Cir.

5  2000).   Furthermore, courts evaluate collateral estoppel "in light of the policy concerns

6  underlying the doctrine." *United States v. Stauffer Chem. Co.*, 464 U.S. 165, 176 (1984) (White,

7  J., concurring).  The doctrine of collateral estoppel is designed to "relieve the parties of the cost

8  and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent

9  decision, encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94 (1980); *see

10  also In re Bridgestone/Firestone Inc. Tires Prods.*, 333 F.3d 763, 767 (7th Cir. 2003)

11  ("[W]henever plaintiffs can roll the dice as many times as they please[,] . . . [it] perpetuat[es] an

12  asymmetric system in which class counsel can win but never lose.").

13       Relying on collateral estoppel grounds, federal courts have consistently barred class-wide

14  claims where another court has previously denied certification—even in cases brought by

15  different named plaintiffs. *See Frosini v. Bridgestone Firestone N. Am. Tire, LLC*, No. CV 05-

16  0578 CAS (RZx), 2007 U.S. Dist. LEXIS 73767 (C.D. Cal. Aug. 24, 2007); *In re Bridgestone*,

17  333 F.3d 763; *In re Dalkin Shield Punitive Damages Litig.*, 613 F. Supp. 1112 (E.D. Va. 1985);

18  *Breakstone v. Caterpillar, Inc.*, No. 09-23324, 2010 U.S. Dist. LEXIS 142220 (S.D. Fl. May 26,

19  2010); *Mauro v. Fed. Express Corp.*, No. CV 08-8526, 2009 U.S. Dist. LEXIS 59954 (C.D. Cal.

20  June 18, 2009); *see also Babineau v. Fed. Express Corp.*, No. 08-21428, 2008 U.S. Dist. LEXIS

21  109500, at *23–24 (S.D. Fla. Oct. 2, 2008) (finding "merit" in defendant's argument that a

22  putative state class should be collaterally estopped from certification based on previous order

23  denying certification of a nationwide class).  California state courts also have invoked collateral

24  estoppel to bar attempts to relitigate issues of class certification. *See, e.g.*, *Alvarez v. May Dep't

25  Stores*, 143 Cal. App. 4th 1223 (2006) (upholding dismissal of class action on collateral estoppel

26  grounds where the defendant had previously defeated class certification in a previous action).  As

27  the Second Circuit stated in *Ferris v. Cuevas*, "plaintiffs who fail to obtain a class action

28

certification, but nevertheless assert the authority to represent other similarly situated persons and who are demonstrated to be in privity with those other persons, are not immune from application of *res judicata*." 118 F.3d 122, 130 (2d Cir. 1997); *accord Johnson v. GlaxoSmithKline, Inc.*, 166 Cal. App. 4th 1497, 1510 (2008) ("If all . . . elements required for application of collateral estoppel are present, the doctrine is fully applicable to preclude relitigation of issues finally resolved as part of a class certification determination in a prior proceeding.").

All three elements required for application of collateral estoppel exist here: (1) Plaintiffs seek adjudication of issues already decided by the court in *Lagos*; (2) the order decertifying the *Lagos* class is a final judgment for purposes of collateral estoppel; and (3) privity exists between Plaintiffs here and plaintiffs who sought and were denied certification in *Lagos*. As Plaintiffs here would have enjoyed the rewards of a favorable outcome in *Lagos*, fairness and judicial economy dictate that they should be bound by the effect of the decertification decision against them. Importantly, application of the doctrine of collateral estoppel does not lead to an unfair result—Plaintiffs remain free to litigate the merits of their personal claims on an individual basis.

**1.   The issues decided in *Lagos* are substantially identical to the issues Plaintiffs seek to be relitigated in this lawsuit.**

**a.   The issue of collective action certification under the FLSA has already been decided by the court in *Lagos*.**

Collateral estoppel bars Plaintiffs' FLSA claims because the issue of collective action class certification has already been decided in the *Lagos* case. In *Lagos*, plaintiffs sought collective action certification under 29 U.S.C. § 216(b) for a nationwide class of current and former Cogent GAMs and RAMs to recover alleged unpaid overtime wages under the FLSA. To maintain a collective action under the FLSA, a plaintiff must show that the putative collective action members are similarly situated. *Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 837 (N.D. Cal. 2010). Although neither the FLSA nor the Ninth Circuit have defined "similarly situated," a majority of courts—including courts in this district—have adopted a two-step approach for determining whether a class is "similarly situated." *Wellens v. Daiichi Sankyo Inc.*,

No. C-13-00581 DMR, 2014 U.S. Dist. LEXIS 50727, at *4 (N.D. Cal. Apr. 11, 2014) (citing *Harris*, 716 F. Supp. 2d at 837).

Under this approach, a district court first determines, based on the pleadings and submitted affidavits, whether plaintiffs in the putative collective action are similarly situated. *Harris*, 716 F. Supp. 2d at 837. The determination of whether the putative class members are similarly situated is made using a lenient standard and typically results in conditional class certification. *Id.* Next, usually after discovery is complete, the defendant may move to decertify the conditional class. *Id.* The court determines the propriety of the class in this second step using a more stringent standard based on the following factors: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations. *Id.*

The district court in *Lagos* granted plaintiffs' request for conditional certification. Following discovery, however, the court decertified the class, finding that named plaintiffs' and putative opt-in plaintiffs' FLSA overtime claims were not amenable to collective treatment. In its decertification order, the Texas district court clearly laid out its findings that the overtime claims of the named and putative plaintiffs would require individual determinations:

- "[D]ue to the variation in the amount of time that Opt-In Plaintiffs spent on outside sales, determining whether each Plaintiff is exempt under the outside sales exemption would require dozens of mini-trials. A jury would have to determine whether each Plaintiff spent a sufficient amount of time on outside sales, and whether those sales were sufficiently indispensable components of their sales efforts. Based on Plaintiffs' varied testimony, it would be impossible for the jury to make a blanket determination concerning the FLSA exempt status of the entire class of Plaintiffs." (RJN, Ex. D, at 19.)

- "The outside sales exemption is a highly individualized defense because its applications will require the jury to determine how many hours per week each individual Plaintiff worked outside the office and how important that work was." (*Id.* at 20–21.)

- "Although there are undeniably some common issues of law and fact present in this case, the ultimate issue of whether Plaintiffs were properly classified must be determined on an individualized basis. (*Id.* at 23.)

Here, exactly like in *Lagos*, Plaintiffs seek to recover overtime wages on behalf of themselves and those similarly situated (i.e., on behalf of Cogent GAMs and RAMs). Aside from geographical modifications to the putative collective action in this lawsuit, the collective action allegations and class definitions in *Lagos* and the Complaint here are identical. The court in *Lagos* has already made the factual and legal determination that Plaintiffs and the putative class members in this action are not similarly situated. In fact, the Texas district court made it clear that, based on plaintiffs' varied testimony, it would be ***impossible*** for a jury to determine this case on a collective basis.[2] Accordingly, based on the district court's prior ruling in *Lagos*, Plaintiffs are estopped from proceeding jointly here.

Federal and California state courts have routinely refused to allow collective actions to proceed where another court previously denied certification—even in cases with different named plaintiffs and even where the plaintiffs narrowed the geographical scope of the class. In *Frosini v. Bridgestone Firestone North American Tire*, for example, a California district court held that collateral estoppel prohibited a plaintiff from relitigating class certification under a more narrow class definition. In that case, a California state court denied certification of a nationwide class alleging fraud, strict liability and negligence, and a statewide class alleging California statutory violations. *Frosini*, 2007 U.S. Dist. LEXIS 73767, at *4. The plaintiffs thereafter sought certification of a statewide class alleging the same claims as the nationwide class in the previous state court litigation: fraud, strict liability, and negligence. *Id.* at *6–7. The California federal district court precluded plaintiffs' re-positioned suit on collateral estoppel grounds because the issue buttressing the certification motion in the previous state court matter—"whether a class may be certified to litigate claims . . . based on allegedly defective [] tires"—was sufficiently

---

[2] The California Supreme Court recently re-affirmed that class certification is usually inappropriate, if not impossible, in cases where a putative class claims they had been misclassified as exempt employees under the outside salesperson exemption. *See Duran v. U.S. Bank Nat'l Ass'n*, 59 Cal. 4th 1, 27 (2014) (acknowledging that "a misclassification claim has the potential to raise *numerous individual questions* that may be difficult, *or even impossible*, to litigate on a classwide basis" (emphasis added)).

9

1   identical to the certification issue in the subsequent federal action. *Id.* at *29. That is, the federal

2   court in *Frosini* denied certification of a statewide class on grounds of collateral estoppel

3   following the denial of a substantially similar nationwide class by a California state court.

4       Similarly, in *Alvarez v. May Department Stores*, plaintiffs sought class certification of

5   wage and hour claims, including for unpaid overtime. The defendant employer had previously

6   defeated class certification in an action with the same interested parties, the same claims, and the

7   same counsel. 143 Cal. App. 4th 1223, 1238. The trial court ruled that the employees were

8   barred under the doctrine of collateral estoppel from relitigating the class certification issue. *Id.*

9   at 1231. The California Court of Appeal affirmed, finding that putative classes in both cases

10  alleged similar misconduct, their claims covered the same timeframe, and they sought to

11  represent the same general class of employees. *See id.* at 1237–38 ("The only difference we can

12  discern between the parties is the name of the representative plaintiff. The interested parties,

13  their claims, and their counsel are the same.").

14      Here, similar to *Frosini*, Plaintiffs have alleged the same claims on behalf of a narrowed

15  class after a previous court denied certification of a nationwide class. And just like in *Frosini*,

16  collateral estoppel bars Plaintiffs' class claims here. Also, just like the putative classes in

17  *Frosini* and *Alvarez*, Plaintiffs improperly seek to litigate an issue already decided by another

18  court—whether the claims of Cogent GAMs and RAMs seeking unpaid overtime wages can be

19  determined on a classwide basis. The *Lagos* case involved the same class claims, relating to

20  precisely the same alleged failure to pay overtime. After extensive discovery and a hearing, the

21  Texas district court found that the issue of whether Cogent properly classified its GAMs and

22  RAMs as exempt must be determined on an individual basis. Because the propriety of collective

23  action treatment for Plaintiffs' overtime claims has had its day in court, collateral estoppel

24  precludes Plaintiffs' attempt to re-adjudicate the issue of class certification.

25

26

27

28

### b.   The decertification order in *Lagos* also precludes Plaintiffs' Rule 23 class action claims.

Plaintiffs also seek to certify a class action under Rule 23 to recover unpaid overtime wages under the California Labor Code.  Even though the court in *Lagos* did not explicitly rule on the propriety of a Rule 23 class, as a matter of law it would have been improper for the court to do so.

First, the Rule 23 standard for class certification is more demanding than the FLSA standard for collective certification.  Courts sitting in the Ninth Circuit agree that "[t]he requisite showing of similarity of claims under the FLSA is considerably *less stringent* than the requisite showing under Rule 23 of the Federal Rules of Civil Procedure.  All that need be shown by the plaintiff is that some identifiable nexus binds together the various claims of the class members . . . ."  *Hill v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001, 1009 (N.D. Cal. 2010) (emphasis added) (citation omitted); *see also Harris v. Vector Mkt'g Corp.*, 753 F. Supp. 2d 996, 1003 (N.D. Cal. 2010) ("Courts have generally held that the 'similarly situated' standard under the FLSA is not as stringent a standard as the 'common questions predominate' standard under Federal Rule of Civil Procedure 23(b)(3).").  Simply put, because Rule 23 class certification is more difficult than obtaining collective action certification under the FLSA "similarly-situated" test, Plaintiffs are likewise barred from obtaining class certification under Rule 23.[3]

Second, it is improper to certify a Rule 23 class where another court has determined that individualized questions of fact preclude FLSA certification.  *Myers v. Hertz Corp.*, No. 02-CV-4325 (BMC) (MLO), 2007 U.S. Dist. LEXIS 53572, at *12 (E.D.N.Y July 24, 2007).  In *Myers*,

---

[3] A party seeking class certification under Rule 23 must first meet "'the prerequisites of numerosity, commonality, typicality, and adequacy of representation' specified in Rule 23(a)."  *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 156 (1982).  "[A]ctual, not presumed, conformance with Rule 23(a) [is] indispensable"—a "class action[] may only be certified if the trial court is satisfied, after a *rigorous* analysis, that the prerequisites of Rule 23(a) have been satisfied."  *Id.* at 160–61 (emphasis added); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) ("Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with [Rule 23(a)].").  Next, the putative class must satisfy at least one of the three requirements listed in Rule 23(b).  *Dukes*, 131 S. Ct. at 2548.

11

1   plaintiffs sought Rule 23 certification of state law overtime claims after a federal district court

2   denied collective action certification of FLSA overtime claims.  *See id* at *1–3.  The district

3   court, like the court in *Lagos*, denied conditional certification on grounds that a fact-intensive

4   inquiry would be required for each putative class member.  *Id.* at *12.  The court in *Myers* found

5   that the individualized proof necessary for FLSA certification was "as detrimental to plaintiffs'

6   state-wide class claim as it was to their FLSA collective action claim and equally incurable by

7   discovery."  *Id.*  The court denied Rule 23 certification because the previous court had already

8   determined that individual issues predominated over issues common to the class.  *Id.* at *13–14.

9        The reasoning in *Myers* neatly applies to the instant action.   Just like *Myers*, the court in

10  *Lagos* held that the issue of whether Plaintiffs were properly classified requires a determination

11  on a plaintiff-by-plaintiff basis.  Plaintiffs cannot dodge the decertification order in *Lagos* by

12  filing a geographically narrowed class action in this Court.  As *Myers* made clear, the "fact that

13  plaintiffs' Rule 23 class will be smaller and only encompass [defendant's] locations in New York

14  State as compared to the nation-wide FLSA class does not cure the necessity for individualized

15  proof identified by [the] Judge."  *Id.* at *12.  Further discovery and litigation in this case cannot

16  cure the fatal defect of Plaintiffs' Rule 23 class allegations: individualized inquiries predominate

17  over common issues.

18       Plaintiffs here cannot evade collateral estoppel merely by pinning state law claims onto

19  their FLSA claim.  Each of Plaintiffs' causes of action for alleged state law violations merely

20  parallel their claim for unpaid overtime under the FLSA.  Under similar circumstances, in *Mauro*

21  *v. Federal Express Corporation*, FedEx argued that the putative class of FedEx swing drivers

22  improperly sought to certify the same claims and putative class at issue in a previous case where

23  a court denied class certification of a putative class of FedEx drivers and couriers.  *Mauro*, 2009

24  U.S. Dist. LEXIS 59954, at *1–2.  A California federal district court applied collateral estoppel

25  to bar plaintiffs' attempt to certify a class action for meal and rest claims, even though the

26  putative class tacked on wage and hour violations.  *Id.* at *4.  Despite the additional claims, the

27  court found that both actions evolved "from the same nucleus of facts" and were "entirely based

28

12

1    on a determination of whether [defendant] failed to provide meal and rest breaks or to pay [its]

2    drivers and couriers." *Id.* at *4, *8.  The court precluded the putative class's meal and rest

3    claims, as well as its wage and hour claims, on grounds of collateral estoppel.  This Court should

4    likewise preclude Plaintiffs' tacked-on state law claims.

5         Moreover, as set forth by the Ninth Circuit in *American Fabrics, Inc. v. L & L Textiles,*

6    *Inc.*, the collateral estoppel doctrine "bars relitigation, *even in an action on a different claim*, of

7    all issues of fact that were actually litigated and necessarily decided in the prior proceeding."

8    754 F.2d 1524, 1529 (9th Cir. 1985) (emphasis added).  In this case, Plaintiffs' state law claim

9    for unpaid overtime stems from the same operative facts litigated in *Lagos*—denial of overtime

10   wages based on misclassification.  Furthermore, Plaintiffs' other class claims under California

11   law—failure to pay compensation due and owing (Cal. Labor Code § 202), waiting time

12   penalties (Cal. Labor Code § 203), and violation of California Business and Professions Code §

13   17200 *et seq.*—are derivative of their California overtime claims.  Each of these causes of action

14   are rooted in Plaintiffs' primary allegation that Cogent failed to compensate Plaintiffs and

15   putative class members for overtime hours worked.  Because the California Labor Code claim

16   for unpaid overtime is barred by the *Lagos* decertification order, this Court should also dismiss

17   Plaintiffs' spinoff claims for compensation due, waiting time penalties, and unfair competition.

18        **2.      The *Lagos* decertification order is a final judgment on the merits.**

19        The order decertifying the collective action in *Lagos* is a final judgment on the merits to

20   support application of collateral estoppel.  A "'final judgment' for purposes of collateral estoppel

21   can be any prior adjudication of an issue in another action that is determined to be 'sufficiently

22   firm' to be accorded conclusive effect." *Luben Indus., Inc. v. United States*, 707 F.2d 1037, 1040

23   (9th Cir. 1983) (citing *Miller Brewing Co. v. Jos. Schlitz Brewing Co.*, 605 F.2d 990, 996 (7th

24   Cir. 1979) and Restatement (Second) of Judgments § 13 (1982)).  Issue preclusion typically

25   applies where "the parties were fully heard, . . . the court supported its decision with a reasoned

26   opinion, . . . [and] the decision was subject to appeal or was in fact reviewed on appeal." *Id.*

27   (citing Restatement (Second) of Judgments § 13, cmt. g).

28

13

Despite class certification being procedural, "the denial of class certification stands as an adjudication of one of the issues litigated." *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 336 (1980); *see also Mauro*, 2009 U.S. Dist. LEXIS 59954, at *9 (giving preclusive effect to a decertification order in a previous action); *Murray v. Sears, Roebuck & Co.*, No. 09-05744 CW, 2010 U.S. Dist. LEXIS 83284, at *13 (N.D. Cal. July 21, 2010) (same). The Texas federal court's decision in *Lagos* that "the ultimate issue of whether Plaintiffs were properly classified must be determined on an individualized basis" is "sufficiently firm" for purposes of collateral estoppel as it "was the result of focused attention by counsel" and the court thoroughly analyzed the issue. *See Mauro*, 2009 U.S. Dist. LEXIS 59954, at *9 (citing *In re Bridgestone*, 333 F.3d at 767). Although Plaintiffs in this case were opt-in plaintiffs (i.e., not named) in the *Lagos* litigation, "[a]bsent class members are bound provided that the named representative and their lawyers furnished adequate representation." *In re Bridgestone*, 333 F.3d at 769. The denial of class certification in *Lagos* undoubtedly represents a "final judgment on the merits" for collateral estoppel purposes in the present case.

### 3. The Plaintiffs in the instant action are in privity with the *Lagos* plaintiffs.

Privity exists between the plaintiffs in *Lagos* and Plaintiffs in this suit. The Ninth Circuit has made clear that "privity is a flexible concept dependent on the particular relationship between the parties in each individual set of cases." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1081 (9th Cir. 2003) (citing *In re Schimmels*, 127 F.3d 875, 881 (9th Cir. 1997)). Even for non-identical parties, "privity may exist if there is 'substantial identity' between parties, that is, when there is sufficient commonality of interest." *Id.* (citing *In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir. 1983)); *see also Alpert's Newspaper Delivery Inc. v. N.Y. Times Co.*, 876 F.2d 266, 270 (2d Cir. 1989) ("The issue is one of substance rather than the names in the caption of the case; the inquiry is not limited to a traditional privity analysis."). That is, federal courts will bind a non-party and party where their interests are "so closely aligned as to be virtually representative." *Schimmels*, 127 F.3d at 881 (citation omitted).

14

1    In a class action, unnamed putative class members may be bound by a final judgment in an

2    earlier action if they were adequately represented by a named plaintiff.  *Taylor v. Sturgell*, 128 S.

3    Ct. 2161, 2167, 2172–73 (2008).  Courts have found that privity exists between named plaintiffs

4    in class actions and putative class members, even if the class is ultimately decertified.  *See*

5    *Mauro*, 2009 U.S. Dist. LEXIS 59954, at *9; *In re Bridgestone*, 333 F.3d at 763; *Murray*, 2010

6    U.S. Dist. LEXIS 83284, at *13–14.

7        Here, there is sufficient commonality of interest between the *Lagos* plaintiffs and the

8    Plaintiffs.  First, fourteen of the sixteen named Plaintiffs in this suit filed consents to join the

9    *Lagos* case.  (*See* RJN, Exs. F, G, H, I, J, K.)  Under the FLSA, opt-in plaintiffs became parties

10   to the collective action.  29 U.S.C. § 216(b).  That Plaintiffs were not named plaintiffs, witnesses,

11   or deponents in *Lagos* carries no significance "because such is the case with virtually every

12   member in every class action."  *Murray*, 2010 U.S. Dist. LEXIS 83284, at *14 ("That Plaintiff

13   was not a named plaintiff, class representative, witness or deponent in the [previous decertified

14   class action] is not significant because such is the case with virtually every member in every

15   class action"); *see also Bridgestone*, 333 F.3d at 769 ("Absent class members are bound provided

16   that the named representative and their lawyers furnished adequate representation.").

17       Second, Plaintiffs are represented by the same lead counsel that represented the named

18   plaintiffs and putative class members in *Lagos*.  *See Murray*, 2010 U.S. Dist. LEXIS 83284, at

19   *14 ("Further, it is important to note that Plaintiff is represented by the same lead counsel who

20   represented the class of which he was a member in [the previous class action.]  This makes

21   Plaintiff's conduct appear to be an example of "deliberate maneuvering to avoid the effects of

22   [the previous class decertification.]").

23       Third, there is substantial identity between the putative classes in *Lagos* and the instant

24   action.  Both classes are comprised of the same job types—GAMs and RAMs; Plaintiffs here are

25   praying for the same relief as opt-in plaintiffs in *Lagos*—unpaid overtime wages—during the

26   nearly identical time period; and the putative classes share the same interests and motives—

27   seeking to recover unpaid wages and other damages allegedly owed.  *See Shaw v. Hahn*, 56 F.3d

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT COGENT
COMMUNICATIONS, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS**
CASE NO. 3:14-cv-02182-EDL RS

1128, 1131–32 (9th Cir. 1995) (finding privity when the interests of the party in the subsequent action were shared with and adequately represented by the party in the former action); *Mauro*, 2009 U.S. Dist. LEXIS 59954, at *7 (finding privity between couriers in the first case and swing drivers in the second case because they both pick up and deliver packages to residences and businesses such that their interests "are so closely aligned as to be virtually representative" (internal citation omitted)).  Lead counsel for Plaintiffs here thoroughly litigated and briefed the issue of collective action certification in *Lagos*; the order granting Cogent's Motion to Decertify the Collective Action in *Lagos* was not appealed and is not at issue now.  *See Murray*, 2010 U.S. Dist. LEXIS 83284, at *14.  For these reasons, privity exists between the *Lagos* plaintiffs and Plaintiffs.

Because the requirements of collateral estoppel—adjudication of identical issues, a final judgment on the merits, and privity—have all been met, this Court should grant Cogent's motion and dismiss Plaintiffs' FLSA collective action and Rule 23 class claims with prejudice.

### 4.      Plaintiffs cannot avoid the collateral estoppel bar.

Plaintiffs may attempt to try to avoid the collateral estoppel bar by arguing that the court in *Lagos* did not rule on the propriety of the putative classes indicated in the Complaint—California-only FLSA and Rule 23 classes.  Plaintiffs may cite to a series of related federal district court cases (the "*Wells Fargo* cases")[4] to support the unfounded position that the certification issues in this action were not already decided by the court in *Lagos*.

In the *Wells Fargo* litigation, Wells Fargo moved to dismiss plaintiffs' collective actions and class actions on the basis of collateral estoppel, asserting that the Northern District of California's order denying conditional collective class certification in *Castle v. Wells Fargo*

---

[4] The seven federal district court actions comprising the Wells Fargo litigation are: *Whitt v. Wells Fargo Fin., Inc.*, No. 2:08-CV-1903-PMD (D.S.C.) (filed May 14, 2008); *Kirkland v. Wells Fargo Fin., Inc.*, No. 1:08-CV-1640-TWT (N.D. Ga.) (filed May 5, 2008); *Clark v. Wells Fargo Fin., Inc.*, No. 1:08CV343 (M.D.N.C.) (filed May 22, 2008); *Szittai v. Wells Fargo Fin., Inc.*, No. 5:08-CV-1379 (N.D. Ohio) (filed June 6, 2008); *Salgado v. Wells Fargo Fin., Inc.*, No. CIV. 08-0795 FCD KJM (E.D. Cal.) (filed April 14, 2008); *Dizon v. Wells Fargo Fin., Inc.*, No. 2:08cv2435-PSG-PJW (C.D. Cal.) (filed April 14, 2008); and *Anyere et al. v. Wells Fargo Co.*, No. 1:2009-cv-02769 (N.D. Ill.) (filed May 5, 2009).

16

1    *Financial, Inc.*, No. C 06-4347 SI, 2008 U.S. Dist. LEXIS 106703 (N.D. Cal. Feb. 20, 2008),

2    precluded plaintiffs from relitigating their collective action and/or class action claims.  Wells

3    Fargo moved to dismiss these lawsuits, contending that the *Castle* court's determination that

4    plaintiffs were not similarly situated with regard to a nationwide class precluded plaintiffs'

5    assertion of statewide collective actions and class actions because plaintiffs alleged facts similar

6    to those presented by the *Castle* plaintiffs.  Certain federal courts denied Wells Fargo's motion to

7    dismiss on grounds of collateral estoppel, generally holding that they "[could not] rely on the

8    *Castle* court's determination that plaintiffs there were not similarly situated because [*Castle*]

9    reached its conclusion only with regard to . . . a nationwide class . . . ."  *Anyare v. Wells Fargo,*

10   *Co.*, No. 09-C-2769, 2010 U.S. Dist. LEXIS 29759, at *9–10 (N.D. Ill. Mar. 29, 2010).

11         The *Wells Fargo* cases, however, are distinguishable from the instant lawsuit and

12   Plaintiffs should not be able to use them as a shield where the elements of collateral estoppel

13   have been met.  First, the primary issue before most courts in the *Wells Fargo* cases was whether

14   the decision in *Castle* precluded plaintiffs' attempt to certify statewide classes.  Here, Cogent

15   does not contend that the *Lagos* decision precludes statewide classes, but rather that the *Lagos*

16   decertification order precludes a collective or class action of ***any size***, notwithstanding Plaintiffs'

17   attempt to forum shop in various jurisdictions throughout the country.  The crux of *Lagos* is not

18   that plaintiffs' attempt to certify a nationwide collective action failed as a matter of law, but

19   rather that it would be ***impossible*** for a jury to decide the FLSA exempt status of any putative

20   class of Plaintiffs.  Indeed, whereas the *Castle* court's ruling denying conditional certification

21   focused on the differences among the different geographic locations alleged to be part of a

22   nationwide class, the *Lagos* court's ruling decertifying a class focused on ***differences between***

23   ***the individual members of the alleged class and the individualized inquiries necessary to***

24   ***adjudicate liability***.

25         Second, the court in *Castle* denied conditional certification of the plaintiffs' proposed

26   collective class—i.e., the court determined the putative class members were not similarly

27   situated based on the submitted pleadings and affidavits, *before* much, if any, discovery.  The

28

17

*Lagos* court, however, granted conditional certification, but subsequently decertified the class *after* extensive discovery and briefing on whether plaintiffs in *Lagos* were similarly situated. Procedurally, the standard and burdens of each step in the two-step approach for determining whether a class is "similarly situated" under the FLSA are entirely distinct—at the first stage, the determination of whether the putative class members will be similarly situated is made under a fairly lenient standard, whereas second stage review is much more stringent.   *Harris*, 715 F. Supp. 2d at 837.   The court in *Lagos*, unlike the court in *Castle*, reviewed substantial discovery before concluding that the issue of whether the *Lagos* plaintiffs were properly classified must be determined on an individualized basis.   This Court should give credence to Judge Gilmore's careful and evidence-driven decertification order in *Lagos*.   Plaintiffs' putative collective class suffers from a fatal flaw that no amount of discovery could cure: liability as to any putative class member, regardless of their place of work, requires individualized inquiry into the job duties of each Plaintiff.

### 5. Public policy considerations weigh in favor of giving the *Lagos* decision preclusive effect.

Important public policy concerns favor the application of collateral estoppel in this case. "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions."   *Montana v. United States*, 440 U.S. 147, 153–54 (1979); *Disimone v. Browner*, 121 F.3d 1262, 1267 (9th Cir. 1997); *accord Alvarez*, 143 Cal. App. 4th at 1233.

Cogent has already successfully defended against certification of an FLSA collective class comprising nearly all of the named Plaintiffs and putative class members in this action. The court in *Lagos*, after considering the allegations, facts, and evidence related to putative class members in numerous states, decided that (1) the ultimate issue of whether Cogent properly classified Plaintiffs must be determined on an individual basis; (2) the outside sales exemption—asserted by Cogent in both *Lagos* and the instant action—is a highly individualized defense; and

18

(3) the putative class members' diverging testimony would make it impossible for a jury to decide the case on a collective basis. (*See* RJN, Ex. D, at 7–25.) Plaintiffs' attempt to avoid the consequences of the *Lagos* decertification order by filing this lawsuit jointly will result in Cogent having to relitigate issues previously ruled upon in its favor and against Plaintiffs. Condoning such strategic evasion would thwart the policies underlying collateral estoppel.

Moreover, the *Lagos* decision should be given preclusive effect to prevent Plaintiffs from forum shopping. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 17 n.20 (1983) (to avoid forum shopping, courts may consider "the vexatious or reactive nature of either the federal or the state litigation."); *Molski v. Eos Estate Winery*, No. CV 03-5880-GAF, 2005 U.S. Dist. LEXIS 39936, at *14 (C.D. Cal. July 14, 2005) (citing, *inter alia*, *Hanna v. Plumer*, 380 U.S. 460, 467–48 (1965)) ("Discouraging forum-shopping is a legitimate goal for the federal court."). Plaintiffs' counsel has filed five different multi-plaintiff actions alleging the same FLSA claim for unpaid overtime wages after the court in *Lagos* decertified a nationwide collective class. Moreover, protecting Cogent from repetitive cases of identical legal issues outweighs the interest of Plaintiffs in representing a putative class that has already been found to present individual issues that predominate over any issues common to the class. Ultimately, applying collateral estoppel is fair because Plaintiffs and any putative class members are free to litigate their claims individually.

## V. <u>CONCLUSION</u>

Based on the foregoing, Cogent requests that this Court apply the doctrine of collateral estoppel to dismiss Plaintiffs' FLSA collective action claims and Rule 23 class action claims with prejudice.

Date: July 14, 2014                                    HAYNES AND BOONE, LLP


By:  */s/ Tamara I. Devitt*
_____
Tamara I. Devitt
Attorneys for Defendant
COGENT COMMUNICATIONS, INC.

19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

I hereby certify that on July 14, 2014, I filed the foregoing document:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT**

**COGENT COMMUNICATIONS, INC.'S MOTION FOR JUDGMENT ON THE**

**PLEADINGS** with the Court through this district's CM/ECF system.  Pursuant to Local Rule 5-

3.3, the "Notice of Electronic Filing" automatically generated by the CM/ECF at the time the

document is filed with the system constitutes automatic service of the document on counsel of

record who have consented to electronic service.  (See Service List below)

THOMAS E. DUCKWORTH (SBN 152369)     *Attorneys for Plaintiffs*
(tom@dplolaw.com)
MONIQUE OLIVIER (SBN 190385)
(monique@dplolaw.com)
**DUCKWORTH PETERS LEBOWITZ
OLIVIER LLP**
100 Bush Street, Suite 1800
San Francisco, California 94104
Telephone: (415) 433-0333
Facsimile: (415) 449-6556

TODD SLOBIN (*Pro Hac Vice pending*)
DARYL J. SINKULE (*Pro Hac Vice
pending*)
SIDD RAO (*Pro Hac Vice pending*)
DORIAN VANDENBERG-RODES (*Pro
Hac Vice pending*)
**SHELLIST | LAZARZ | SLOBIN LLP**
11 Greenway Plaza, Suite 1515
Houston, Texas 77046
Telephone: (713) 621-2277
Facsimile: (713) 621-0993

_/s/_  Breean Cordova
Breean Cordova

1