United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOAN AMBROSIA, et al.,

      Plaintiffs,

    v.

COGENT COMMUNICATIONS, INC.,

      Defendant.

Case No.  14-cv-02182-RS

**ORDER GRANTING MOTION CONDITIONALLY TO CERTIFY COLLECTIVE ACTION, TO CERTIFY CLASS ACTION, AND GRANTING MOTION TO DISMISS CERTAIN INDIVIDUAL PLAINTIFFS**

## I. INTRODUCTION

In this putative class and collective action, Plaintiff Joan Ambrosio,[1] alongside a host of other salaried employees of defendant Cogent Communications, Inc. ("Cogent"), seeks damages and other relief based on Cogent's alleged failure to pay overtime in violation of California and federal law.  The putative class consists of all current and former California-based account managers who were classified as exempt and worked for Cogent between May 12, 2010 and the date of final judgment.  Plaintiffs also move under section 216(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, conditionally to certify a collective action and to disseminate notice.  Cogent opposes both motions and also moves to dismiss three plaintiffs on the ground they failed to appear for their noticed depositions.

---

[1] Joan Ambrosio's name was misspelled in the caption.  The parties have corrected it in their briefs, but have not filed a request to modify the caption.

United States District Court
Northern District of California

For the reasons that follow, the motion for conditional certification of the collective action is granted for the purpose of notification.  Plaintiffs' motion for class certification also is granted. The parties shall meet and confer regarding the contents of a joint notice, and on or before twenty-one (21) days from the date of this order, submit a proposal to the Court.  Cogent's motion to dismiss individual plaintiffs Jane LaCap, Tony Trinh, and Bill Chan is granted.

## II. FACTUAL BACKGROUND

Defendant Cogent Communications, Inc. provides customers with internet access and data transport services through its various data centers.  Cogent services over 170 major markets across North America, Europe, and Asia.  Plaintiffs are salesman employed by Cogent as Regional Account Managers ("RAMs"), National Account Managers ("NAMs"), or Global Account Managers ("GAMs").  RAMs are entry-level, NAMs are intermediate, and GAMs are senior-level sales employees.

The instant dispute centers on plaintiffs' allegation that Cogent fails to pay overtime in violation of state and federal law.  By way of background, a similar case was brought in December 2011 in the Southern District of Texas.  *See Lagos, et al. v. Cogent Communications, Inc.*, No. H-11-4523 (Filed Dec. 21, 2011).   There, three former employees alleged Cogent failed to pay overtime in violation of the FLSA.  The *Lagos* court conditionally certified a nationwide class, but following discovery and an opt-in period, decertified the collective action.

Two months later, five additional suits were brought against Cogent alleging similar overtime violations on behalf of plaintiffs in California, Florida, the District of Columbia, Virginia, and New York.[2]  Plaintiffs in the instant matter assert the same FLSA claim for unpaid overtime as was set forth in *Lagos* and three additional claims under California state law: failure to pay overtime in violation of California Labor Code §§ 510, 1194; failure to pay wages due and

---

[2] In addition to the instant suit, those case are *Cuartas, et al. v. Cogent Communications, Inc.*, No. 14-21429 (S.D. Fla.) (filed Apr. 22, 2014); *Jones, et al. v. Cogent Communications, Inc.*, No. 14-675-ESH (D.D.C) (filed Apr. 22, 2014); *Allen, et al. v. Cogent Communications, Inc.*, No. 14-459 (E.D. Va.) (filed Apr. 25, 2014); and *Branch, et al. v. Cogent Communications, Inc.*, No. 14-3551 (S.D.N.Y) (filed May 16, 2014).

owing in violation of California Labor Code §§ 200–203; and violation of the Unfair Competition Law (UCL), California Business & Professions Code, § 17200 *et seq.*  Plaintiffs seek to represent a statewide class for their California claims comprised of "[a]ll persons who were, are, or will be employed by Cogent throughout California from May 12, 2010 through the date of final judgment as Regional Account Managers, National Account Managers or Global Account Managers and were classified by Cogent as exempt from overtime compensation."  Not. of Mot. for Class Cert. at 1:9–13.  Plaintiffs also propose an FLSA collective action on behalf of the California-based account managers ("AMs") employed by Cogent after May 12, 2011.

### III. DISCUSSION[3]

#### A. Motion Conditionally to Certify Collective Action

##### 1. Legal Standard

The FLSA provides employees with a private right of action to enforce the minimum wage and overtime provisions of the Act.  *See* 29 U.S.C. § 216(b).  Named plaintiffs may bring an action, not just on their own behalf, but also for "other employees similarly situated."  *Id.*  Employees seeking to join the suit as part of a collective action must consent in a writing filed with the court.  *See id.*; *Hill v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001, 1008 (N.D. Cal. 2010) (explaining that, unlike class actions brought under Federal Rule of Civil Procedure 23, FLSA collective actions require individual members to "opt-in").

Determining whether a suit properly may be maintained as a FLSA collective action is within the discretion of the court.  *See Leuthold v. Destination Am.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004).  Courts in this District have applied a two-step approach to determine whether the putative class is "similarly situated."  *See, e.g.*, *id.* at 467; *Lewis v. Wells Fargo & Co.*, 669 F.

---

[3] In support of its briefs in opposition to class and collective action certification, Cogent commissioned a report by economist Peter H. Nickerson opining on "the appropriateness of either certification." Report at 2.  Nickerson's report, however, clearly is advocacy couched as expert opinion.  Plaintiffs' objection to consideration of the report at this juncture accordingly is sustained.  *See, e.g.*, *Kamakahi v. Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164, 176 (N.D. Cal. 2015) (noting objection is appropriate "[w]here an 'expert report' amounts to written advocacy . . . akin to a supplemental brief") (quotation marks omitted).

United States District Court
Northern District of California

1    Supp. 2d 1124, 1127 (N.D. Cal. 2009).  In the first step, the court makes an initial determination

2    whether conditionally to certify the class for purposes of providing notice of the pending suit to

3    potential members.  *See Leuthold*, 224 F.R.D. at 467.  In the second step, usually after the close of

4    discovery, the defendant may move for decertification.  *Id.*  Based on greater factual evidence, the

5    court at this stage generally applies a more "stringent" analysis.  *Id.*

6         Plaintiffs bear the burden of demonstrating that members of the proposed class are

7    similarly situated.  *Id.* at 466.  At the notice stage, however, the standard for certification is "a

8    lenient one that typically results in certification."  *Hill*, 690 F. Supp. 2d at 1009 (citation omitted).

9    Courts primarily make this initial determination based on pleadings and affidavits and may grant

10   conditional certification on "nothing more than substantial allegations that the putative class

11   members were together the victims of a single decision, policy, or plan."  *Newton v.*

12   *Schwarzenegger*, No. C 09–5887 VRW, 2010 WL 2280532, at *3 (N.D. Cal. June 7, 2010)

13   (internal quotation marks and citation omitted).  Plaintiffs are required to show only that they are

14   in a "similar" position as other class members, not an identical one, with respect to their FLSA

15   claim.  *See Morton v. Valley Farm Transp., Inc.*, No. C 06-2933 SI, 2007 U.S. Dist. LEXIS 31755,

16   at *6 (N.D. Cal. Apr. 13, 2007).

17                    **2. Conditional Certification**

18        The proposed FLSA class consists of "[a]ll persons who were, are, or will be employed by

19   Cogent throughout California from May 12, 2011 to the end of the opt-in period as Regional

20   Account Managers, National Account Managers or Global Account Managers and were classified

21   by Cogent as exempt from overtime compensation." Mot. to Fac. Collective Action at 2:14–18.

22        As a preliminary matter, Cogent urges the application of a more stringent standard for

23   determining whether members of the proposed class are similarly situated.  Cogent submits the

24   lenient notice standard is inappropriate because the parties conducted substantial pre-certification

25   discovery, including the production of over 4000 pages of documents and the depositions of 13

26   plaintiffs, two Cogent corporate representatives, and two Cogent management-level employees.

27   Plaintiffs respond that the factual record is far from complete, and note there are ongoing

28

4

discovery disputes over arbitration agreements signed by some putative class members.

Importantly, "courts in this Circuit overwhelmingly 'refuse to depart from the notice stage analysis prior to the close of discovery.'" *Luque v. AT&T Corp.*, No. C 09–05885 CRB, 2010 WL 4807088, at \*3 (N.D. Cal. Nov. 19, 2010) (quoting *Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 629 (E.D. Cal. 2009)).  This cautious approach is prudent.  Leapfrogging step one not only deprives potential plaintiffs of an opportunity to join the suit, but also obliges the Court to proceed on an unsettled record, possibly depriving it of facts that would support plaintiffs' arguments for class treatment. *See Leuthold*, 224 F.R.D. at 467–68.  Measured against this prejudice to plaintiffs, "the consequences to defendants of beginning with tier one are not unduly burdensome." *Id.* at 468.  Indeed, "[s]hould the court conditionally certify the class, defendants will be free to move for decertification once the factual record has been finalized and the time period for opting in has expired." *Id.*

In the instant case, it is undisputed that the factual record is not complete, and it is possible the discovery yet to be propounded could inform the step-two analysis.  The more lenient step one notice standard is therefore presently appropriate. *See id.* at 467–68 (applying notice standard even though "the parties have filed an impressive pile of declarations and deposition excerpts").

Under that standard, as noted above, plaintiffs must provide "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Newton*, 2010 WL 2280532 at \*3.  Plaintiffs' argument is two-fold.  First, they allege, and Cogent concedes, that all putative class members uniformly are classified as exempt employees, and therefore do not receive overtime compensation.  Plaintiffs submit this sole allegation is sufficient for conditional certification.

Second, plaintiffs argue that putative class members share the same core job duties and are subject to the same corporate policies and practices.  In particular, all of the putative class members sell Cogent's internet data services.  They are also recruited and hired using the same job

United States District Court
Northern District of California

1    description,[4] paid under the same compensation plan (a base salary plus commission without

2    overtime), encouraged to attend the same trainings (instructing them to make calls, close deals,

3    and leave records), and routinely work more than forty hours in a single week.

4         Cogent responds that while plaintiffs and putative class members share the same *primary*

5    job duty—to sell Cogent's products—"the *manner* in which each AM performs his or her sales

6    duties varies significantly from individual to individual." Opp'n at 19:18–20.  This variation is

7    apparently driven by each AM's personality, management, and preferred method of selling, along

8    with their work experience, customer preferences, customer locations, and broader book of

9    business.  The result is that there is no uniform "Cogent way" of selling, leading class members to

10   exhibit substantial diversity in individual work-day experiences.  Beyond this, Cogent insists that

11   application of the outside sales exemption is too individualized for collective treatment.  Cogent

12   also suggests the administrative exemption will necessitate a fact-intensive inquiry.  Finally,

13   Cogent maintains it is not appropriate to generalize from the representative plaintiffs because they

14   were not drawn from all seven California-based offices and did not work directly under nine of the

15   thirty possible supervisors.

16        Notwithstanding Cogent's objections, plaintiffs have met their initial burden to show

17   members of the proposed class are similarly situated.  Plaintiffs demonstrate that a single policy—

18   exemption—applies uniformly to the account managers.  Plaintiffs also furnish evidence evincing

19   adequately that class members perform substantially similar job duties.  Indeed, plaintiffs' 17

20   deposition excerpts, 10 declarations, and other "post-*Lagos* evidence"[5] suggest an AM's work

21   week often exceeds forty hours and centers on telephone and computer activity conducted inside

22   _____

23   [4] Cogent notes it no longer uses a single job description for all account manager positions.

24   [5] The documents styled as "post-*Lagos* evidence" include: Cogent's Time Management Tips
     (indicating AM's need to get to forty activities per day to be successful); Cogent's Job

25   Requirements for the Regional Account Manager I position (listing "phone activity" "Siebel
     activity" and "Call List" as the required daily activities); Cogent's RAM1 Suggested Daily

26   Schedule MDR3 (omitting outside sales as a daily goal); and Cogent's Training Manual
     (suggesting forty to sixty activities per day in Siebel). *See* FLSA Reply at 2–3; Duckworth Decl.

27   Exs. 40, 41, 42, 49.

28

1   the office, pursuant to corporate training or management instruction.  What is more, even though

2   "[c]ourts need not even consider evidence provided by defendants at this stage," *Luque*, 2010 WL

3   4807088 at *3, "[t]he fact that a defendant submits competing declarations," as Cogent did here,

4   "will not as a general rule preclude conditional certification." *Harris v. Vector Mktg. Corp.*, 716 F.

5   Supp. 2d 835, 838 (N.D. Cal. 2010).  Rather, "competing declarations simply create a 'he-said-

6   she-said' situation; [and] while '[i]t may be true that the [defendant's] evidence will later negate

7   [the plaintiff's] claims, that should not bar conditional certification at the first stage.'" *Id.* (quoting

8   *Escobar v. Whiteside Constr. Corp.*, No. C 08-01120 WHA, 2008 WL 3915715, at *4 (N.D. Cal.

9   Aug. 21, 2008)).  Cogent may well be correct that an individualized inquiry is warranted to

10  analyze the applicability of the administrative or outside sales exemptions.  Those issues are better

11  addressed, however, at the second stage of collective action certification.[6]

12      **B. Motion to Certify Class Action**

13          Plaintiffs move to certify three state law claims for failure to pay overtime, failure to pay

14  wages due and owing, and violation of California's unfair competition law.  The putative class

15  consists of "[a]ll persons who were, are, or will be employed by Cogent throughout California

16  from May 12, 2010 through the date of final judgment as Regional Account Managers, National

17  Account Managers or Global Account Managers and were classified by Cogent as exempt from

18  overtime compensation."  Not. of Mot. for Class Cert. at 1:9–13.

19          **1. Legal Standard**

20          Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure, which

21  represents much more than a mere pleading standard.  To obtain class certification, plaintiffs bear

22  the burden of showing they have met each of the four requirements of Rule 23(a) and at least one

23  subsection of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186, *amended by*

24  273 F.3d 1266 (9th Cir. 2001). "A party seeking class certification must affirmatively demonstrate

25  . . . compliance with the Rule." *Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

26  _____

27  [6] Given the disposition of the Rule 23 issues, the notice will be discussed below.

28

United States District Court
Northern District of California

Rule 23(a) provides that a district court may certify a class only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  That is, the class must satisfy the requirements of numerosity, commonality, typicality, and adequacy of representation to maintain a class action. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).

If all four prerequisites of Rule 23(a) are satisfied, a court must also find that plaintiffs "satisfy through evidentiary proof" at least one of the three subsections of Rule 23(b). *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013).  Relevant here is Rule 23(b)(3), which permits certification if a court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1194 (2013) (quoting *Dukes*, 131 S. Ct. at 2551); *see also Mazza*, 666 F.3d at 588 ("Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23.").  This "rigorous" analysis applies to both Rule 23(a) and Rule 23(b). *See Comcast*, 133 S. Ct. at 1432 (discussing how Congress included "addition[al] . . . procedural safeguards for (b)(3) class members beyond those provided for (b)(1) or (b)(2) class members (e.g., an opportunity to opt out)" and how a court has a "duty to take a 'close look' at whether common questions predominate over individual ones").

Nevertheless, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 133 S. Ct. at 1194–95.  "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1195.  If a court concludes that the moving party has met its burden of proof, then the court has broad discretion to certify the class. *Zinser*,

253 F.3d at 1186.

## 2. Rule 23(a) Requirements

### a. Numerosity

Numerosity is met if the potential class members are so numerous that the alternative—joinder of individual plaintiffs—is "impracticable." Fed. R. Civ. P. 23(a)(1).  While there is no fixed number that satisfies the numerosity requirement, as a general matter, a class greater than forty often satisfies the requirement, while one less than twenty-one does not. *See Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 346 (N.D. Cal. 2008).  Here, plaintiffs contend the class exceeds 250 members, and the record supports that assertion. *See* Duckworth Decl. ¶ 57.  Cogent does not dispute that numerosity of the class is met.  Accordingly, Rule 23(a)(1)'s mandate is satisfied.

### b. Commonality

Federal Rule of Civil Procedure 23(a)(2) requires some "questions of fact and law which are common to the class."  The commonality requirement of Rule 23(a)(2) is construed less rigorously than the "predominance" requirement of Rule 23(b)(3). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  "[C]ommonality requires that the class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke.'" *Mazza*, 666 F.3d at 588 (quoting *Wal–Mart*, 131 S. Ct. at 2551) (internal alteration omitted).  Stated differently, "the key inquiry is not whether the plaintiffs have raised common questions, 'even in droves,' but rather, whether class treatment will 'generate common *answers* apt to drive the resolution of the litigation.'" *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Wal–Mart*, 131 S. Ct. at 2551).  This does not mean that every question of law or fact must be common to the class; rather, "all that Rule 23(a)(2) requires is a single *significant* question of law or fact." *Id.* (internal quotation marks omitted).

Plaintiffs maintain all of their claims stem from the common allegation that Cogent

United States District Court
Northern District of California

misclassifies account managers as exempt employees under the outside sales exemption.[7]   In their view, the question lying at the core of the case is whether class members properly are categorized as exempt under California law.

Turning to that law, Cogent raises two separate exemptions: the outside sales exemption and the administrative exemption.[8]   With respect to the former, section 1171 of the Labor Code provides the overtime pay requirements apply to individuals "employed in any occupation, trade, or industry, whether compensation is measured by time, piece, or otherwise, but shall *not* include any individual employed as an outside salesman." Cal. Labor Code § 1171 (emphasis added); *see also* 8 C.C.R. § 11040; Cal. Indus. Welfare Comm'n Order No. 4–2001 ("Wage Order No. 4–2001").   An "outside salesperson" is one "who customarily and regularly works more than half the working time away from the employer's place of business selling tangible or intangible items or obtaining orders or contracts for products, services or use of facilities." Wage Order No. 4–2001. California "takes a purely quantitative approach" that focuses exclusively on whether the employee spends more than half of the workday engaged in sales activities outside the office.[9] *Duran v. U.S. Bank Nat. Ass'n*, 59 Cal. 4th 1 (2014) (quotation marks omitted).

With respect to the latter exemption, a five-part test governs.   The employee must: (1) perform "office or non-manual work directly related to management policies or general business operations" of the employer or its customers, (2) "customarily and regularly exercise[ ] discretion

---

[7] Specifically, the right of the class to recover overtime compensation is derivative of a finding of non-exemption.  Similarly, the claim for waiting time penalties is derivative of the claim for overtime wages.  Finally, liability under the UCL hinges on the determination of whether Cogent misclassified the putative class as exempt under state or federal law.

[8] The administrative exemption, while invoked by Cogent, is then largely ignored with the result that no further consideration is warranted.

[9] Further, "[t]he exemption requires scrutiny of both the job description and an employee's own work habits." *Duran*, 59 Cal. 4th at 26.  Courts inquire, "first and foremost, how the employee *actually* spends his or her time," and then examine "whether the employee's practice diverges from the employer's realistic expectations, whether there was any concrete expression of employer displeasure over an employee's substandard performance, and whether these expressions were themselves realistic given the actual overall requirements of the job." *Id.* (quotation marks and citation omitted).

and independent judgment," (3) "perform[ ] under only general supervision work along specialized or technical lines requiring special training" or "execute [ ] under only general supervision special assignments and tasks," (4) be engaged in the activities meeting the test for the exemption at least 50 percent of the time, and (5) earn twice the state's minimum wage. *See Eicher v. Advanced Bus. Integrators, Inc.*, 151 Cal. App. 4th 1363, 1371–72 (2007) (quoting Wage Order No. 4–2001).  Importantly, employers are liable for misclassification on a classwide basis if they either have a "consistently applied policy or uniform job requirements and expectations contrary to a Labor Code exemption," or "knowingly encourage[] a uniform de facto practice inconsistent with [an] exemption." *Duran*, 59 Cal. 4th at 37.

In light of these standards, plaintiffs suggest a number of additional common questions, including whether class members worked more than fifty percent of the time outside the office, regularly exercised independent judgment, and were subject to more than just general supervision. Plaintiffs maintain class treatment will generate common answers to these questions because the putative class members share substantially similar job duties.  As noted above, all putative class members sell Cogent's internet data services, were recruited and hired using the same job description, and are paid under the same compensation plan.  Plaintiffs also insist, as explained in greater detail below, that Cogent circumscribes how, when, and where account managers are to perform sales.

Though Cogent's response speaks largely to Rule 23(b)(3), it nevertheless maintains that the common question—whether AMs properly are categorized as exempt—is incapable of classwide determination due to wide variation in how and where each AM performed their individual job.  Cogent insists the exemption policy, job description, and job requirements do not constitute common proof because they say nothing about how each individual AM performed their work in practice.  Cogent also asserts there are no uniform policies or procedures across the offices, so there is no possibility common evidence could determine the applicability of any exemption.

All told, plaintiffs have the more persuasive argument.  Common legal and factual

questions exist regarding whether Cogent knowingly encouraged a uniform de facto practice inconsistent with conducting outside sales, whether class members worked more than fifty percent of the time outside the office, whether class members regularly exercised independent judgment, and whether class members were subject to more than just general supervision.[10] Cogent ultimately may prevail in establishing there are no uniform policies directing AMs where to spend their day.  For now, however, plaintiffs raise common legal and factual questions sufficient to satisfy Rule 23(a)(2).

### c. Typicality

The representative plaintiffs' claims must also be typical of those advanced by the class. Fed. R. Civ. P. 23(a)(3).  Admittedly, the "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157–158 n.13 (1982). Typicality, however, like adequacy, is directed to ensuring that plaintiffs are proper parties to proceed with the suit.  The test is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).  That said, "[t]ypicality refers to the nature of the claim or defense of the class representative," and less so "the specific facts from which it arose or the relief sought." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Weinberger v. Thornton,* 114 F.R.D. 599, 603 (S.D. Cal. 1986)).  "Under the rule's permissive standards, representative claims are 'typical' if they are *reasonably co-extensive* with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020 (emphasis added).

Plaintiffs contend their claims are typical of the class because they arise out of Cogent's uniform conduct toward its employees.  Specifically, Cogent admits it classifies all of its account

---

[10] Additional common questions derivative of the exemption determination include whether the failure to pay overtime merits waiting time penalties or constitutes unfair competition.

United States District Court
Northern District of California

managers, including the representative plaintiffs, as exempt.  Thus, plaintiffs assert their claims are materially identical to those of the putative class.  Cogent responds that plaintiffs have not shown each AM enjoys a similar work experience.  Cogent therefore contends the facts required to prove plaintiffs' claims must be different from those of the putative class.

Plaintiffs once again have the more persuasive argument.  Insofar as the representative plaintiffs have been injured by Cogent's failure to provide overtime compensation, they not only share that injury with members of the putative class, but the injury also stems from similar conduct—namely, the exemption classification and Cogent's job requirements, time management strategies, and daily schedules.  Though Cogent highlights some alleged factual differences that supposedly plague the representatives, those allegations do not detract from the conclusion that their claims are "reasonably coextensive" with those of the class.  Rule 23(a)(3)'s requirements are accordingly met.

### d. Adequacy of Representation

Under Rule 23(a), the named plaintiffs must be deemed capable of adequately representing the interests of the entire class, including absent class members. *See* Fed. R. Civ. P. 23(a)(4) (requiring "representative parties [who] will fairly and adequately protect the interests of the class").  The adequacy inquiry turns on: (1) whether the named plaintiff and class counsel have any conflicts of interest with other class members; and (2) whether the representative plaintiff and class counsel can vigorously prosecute the action on behalf of the class. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).  In practice, courts have interpreted this test to encompass a number of factors, including "the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." *Brown v. Ticor Title Ins.*, 982 F.2d 386, 390 (9th Cir. 1992) (quoting *In re N. Dist. of Cal. Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 855 (9th Cir. 1982)).

Here, plaintiffs assert they harbor no interest antagonistic to the putative class, as they uniformly served as account salespersons in the same manner as putative class members.

United States District Court
Northern District of California

Plaintiffs further insist the capability of their counsel is beyond dispute.  Cogent responds by suggesting the representatives are inadequate because they gave allegedly inconsistent testimony, raising issues relevant to assessing their overall veracity.

Cogent's argument lacks merit.  The relatively minor discrepancies Cogent highlights do not give rise to a reasonable suspicion about the adequacy of the representative plaintiffs.  Further, there is no indication that any conflicts of interest exist, and plaintiffs have retained counsel sufficiently qualified to ensure vigorous prosecution on behalf of the class.  Accordingly, the adequacy requirement of Rule 23(a)(4) is met.

### 3. Rule 23(b)(3) Requirements

#### a. Predominance

Rule 23(b)(3) requires that "questions of law or fact common to class members *predominate* over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3) (emphasis added).  The analysis "presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2)." *Hanlon*, 150 F.3d at 1022.  Thus, the predominance analysis "focuses on 'the relationship between the common and individual issues' in the case and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013) (quoting *Hanlon*, 150 F.3d at 1022).  The main concern is "the balance between individual and common issues." *Id.* at 546 (quotation marks and citation omitted).

At the outset, a few observations are warranted.  First, Cogent's blanket exemption policy, while apposite, does not establish that common issues predominate, nor can it be relied on "to the near exclusion of other factors relevant to the predominance inquiry." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009).  Second, it is well established that the outside sales exemption often "militate[s] against certification" because it typically requires an individualized, fact-intensive inquiry.  *Id.* Third, notwithstanding point two, the outsides sales and administrative exemptions do not *foreclose* the possibility of certification, but to certify, courts must investigate whether there are "centralized rules . . . suggest[ing] a uniformity among

employees that is susceptible to common proof." *Id.* at 958–59.  As the Ninth Circuit explained, even though the outside sales exemption requires an investigation of whether an employee in practice customarily is away from the office, "[a] centralized policy requiring employees to be at their desks for 80% of their workday would change this individual issue into a common one." *Id.* at 959.  Thus, "uniform corporate policies will often bear heavily on questions of predominance" because, to the extent they reflect the realities of the workplace, they facilitate common proof of otherwise individualized issues. *Id.* at 958. *See Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 160 (S.D.N.Y. 2008) ("Where . . . there is evidence that the duties of the job are largely defined by comprehensive corporate procedures and policies, district courts have routinely certified classes of employees challenging their classification as exempt, despite arguments about 'individualized' differences in job responsibilities.").

Turning to the evidence in the record, plaintiffs maintain common questions predominate regarding the propriety of their classification because AMs are responsible for the same core job duties, perform their tasks in the same manner, and are subject to the same close supervision ultimately undertaken by Cogent.  In particular, plaintiffs assert AMs essentially are hired to conduct telephonic sales at the company's "call centers," and Cogent's job requirements, time management strategies, and daily schedules "make it impossible for them to work otherwise." Class Cert. Reply at 7:17–19.  It starts with the initial training conference.  According to plaintiffs, all new employees are given sales training emphasizing electronic and telephonic communication, as opposed to in-person communication. *See, e.g.*, Baker Decl. ¶ 12.  Then, once an employee begins work, the actual workday is regimented in a way that leaves little time for outside sales. Employees, for instance, are supposed to record all customer contacts in a system accessible only in the office.  Cogent also allegedly directs employees they "[n]eed to get to 40 activities per day to be successful (that's 10 minutes between calls in an 8 hour day)." *Id.* Ex. 40.[11]  Plaintiffs'

---

[11] Cogent disputes the importance of this document, but Cogent's Training Manual also instructs: "In addition to having 400 orders/opportunities in your sales funnel, every RAM should be creating 40-60 activities per day in Siebel." *See* Duckworth Decl. Ex. 49.

United States District Court
Northern District of California

declarants attest that it is common for AMs to be required to meet daily metrics, and because outside contacts generally do not count towards the quota, employees almost always spend their time inside of the office.  If employees are found consistently unable to meet their required quotas, plaintiffs insist they are put on performance improvement plans (PIPs) that inevitably emphasize phone calls and e-mails.  Adding to the difficulty to set aside time for outside sales, employees indicate they are required to attend an array of meetings, including "morning huddles," "Live at 5" conferences, company-wide calls, and one-on-one's with managers.  Lastly, plaintiffs argue Cogent tightly regulates the manner in which sales are conducted.  Employees must seek approval to sell products below their list prices, and managers frequently take over sales opportunities after the initial contact.[12]  Adding it up, the pressure to meet daily metrics obliges employees to work overtime, and because phone and e-email contact is faster than in-person prospecting, outside sales work—according to plaintiffs—virtually is non-existent.

Cogent makes four points in response.  First and foremost, Cogent insists employees and supervisors are afforded tremendous autonomy in going about selling to customers.  According to Cogent, "AMs have the vast majority of their 40 hour work week unscheduled and available to pursue sales, together with significant freedom to structure their work day, determine the number of hours they work each day, conduct outside sales activities, and achieve their sales quota."[13] Class Cert. Opp'n at 10:16–20.  Though AMs are taught certain companywide selling techniques, they generate sales based on what works best for them in light of the guidance they receive from management.  The upshot is that their job duties may vary if they have different levels of sales experience, or work under different managers with different customer bases.  Thus, Cogent maintains it is impossible to generalize from one class member's experience to any other.

---

[12] Periodically, Cogent also requires its employees to participate in a mandatory "call blitz."

[13] Around 2012, Cogent began leaving it to each Sales Manager to determine whether he or she would require morning huddles or daily team meetings. Cogent also allegedly eliminated the call blitzes on a national level and left it to each Sales Manager and Director to determine whether to continue the program. Cogent asserts it has decreased the number of trainings required by the corporate office.  For these reasons, Cogent believes it is inappropriate to generalize across employees who worked during different segments of the putative class period.

16

Second, Cogent emphasizes that the different positions sell different products to different people in different locations around the country, suggesting each position will engage in outside sales at different levels.[14]  Specifically, Cogent asserts the amount of time spent on outside sales activity varies depending on the AM's preferred method of selling, personality, work experience, management, customer preferences, customer location, and book of business.

Third, because there is no universal employment experience with respect to the hours employees work, quotas employees must meet, or the extent to which employees can close deals, Cogent argues the task of evaluating the exemptions at issue will devolve into a bevy of mini-trials.  Cogent rejects that there is evidence of any companywide policy directing AMs where to spend their day.  Thus, in Cogent's view there is no way to determine the applicability of either exemption without analyzing each AM's actual employment experience.

Lastly, Cogent insists there is no viable way to prove damages on a classwide basis.  The in-house Siebel records allegedly are unreliable because customer contacts are not logged in a uniform manner, nor is it possible to determine whether periods of non-activity in Siebel constitute compensable work periods.  Cogent also notes plaintiffs' testimony about the actual hours they worked is widely varied.  Some plaintiffs worked ten to eleven hours per day every day; others worked over eight hours per day three times per week; still others worked over forty hours per week only one to two weeks per month.  Given this testimony, Cogent maintains there is no common pattern in relation to overtime, and damages simply are not susceptible to common proof.

Though they may not ultimately prevail on the merits of their claims, plaintiffs have satisfied their burden under Rule 23(b)(3).  Looking at the record, there is a sufficient possibility that corporate policies exist to transform the individualized issues into common ones.  To begin, "[a]n internal policy that treats all employees alike for exemption purposes suggests that the

---

[14] Cogent notes AMs can perform various outside sales activities "[a]t their discretion," including "in-person customer meetings, customer lunches, visiting office buildings and business parks to identify prospects, cold calling on prospective customers, maintaining relationships with property managers or data center operators, networking events, and hosting lobbying events." Class Cert. Opp'n at 5:5–8.

employer believes some degree of homogeneity exists among the employees." *In re Wells Fargo*, 571 F.3d at 957.  Adding to that foundation, all of the putative class members sell roughly the same products, are recruited and hired using the same job description, and are paid under the same compensation plan.  Cogent is correct that these factors do not speak to how employees spend their day in practice, but they nevertheless contextualize and lend credence to the testimony submitted on that subject.  Turning to that testimony, which stems from at least twenty different employees at various levels, plaintiffs strongly suggest AMs primarily spend their days conducting telephonic sales inside the office.[15]  Though AMs do not appear to possess identical meeting and quota requirements, there are at least some required meetings, and the AMs consistently testified they were subjected to daily quotas.  Cogent's corporate documents also bolster the argument that uniform policies govern,[16] and plaintiffs expect to present both representative testimony and statistical analysis to support their damages.[17]  In light of this evidence, plaintiffs demonstrate adequately the key legal questions are susceptible to common proof.  The predominance requirement of Rule 23(b)(3) is accordingly met.

---

[15] At oral argument, Cogent made much of the declaration of Brad Hood, which states: "I spend at least half of my working time out in the field/outside the office." Hood Decl. ¶ 5.  Hood goes on to explain, however, "I do spend time working from home during the workweek, on average one to two times per week." *Id.* ¶ 7.  Hood's declaration thus suggests his time "outside the office" is spent telecommuting—a practice both parties agreed at oral argument does not constitute outside sales activity.  Cogent also urged attention to the declarations of Srey Huiras, Kasey Aronson, and Paul Hobus.  Absent from all of those declarations is any indication those employees spent more than half of their time engaged in sales activity outside of the office.  Those declarations also establish employees consistently were subjected to quotas. *See, e.g.*, Huiras Decl. ¶ 7; Aronson Decl. ¶ 5.

[16] Cogent's Time Management Tips indicate AM's need to log forty contacts per day to be successful.  Cogent's Job Requirements for the Regional Account Manager I position list as the required daily activities "phone activity," "Siebel activity," and "Call List."   Cogent's RAM1 Suggested Daily Schedule omits outside sales as a daily goal.  Lastly, Cogent's Training Manual suggests employees need to enter forty to sixty activities per day in Siebel.

[17] In any event, the Ninth Circuit instructs "the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)." *Levya v. Medline Industries Inc.*, 716 F.3d 510, 514 (9th Cir. 2013).

1

**b. Superiority**

2     Rule 23(b)(3) also requires that class resolution be "superior to other available methods for

3   the fair and efficient adjudication of the controversy."  The rule sets forth four relevant factors to

4   guide this determination: "the class members' interests in individually controlling the prosecution

5   or defense of separate actions"; "the extent and nature of any litigation concerning the controversy

6   already begun by or against class members"; "the desirability or undesirability of concentrating

7   the litigation of the claims in the particular forum"; and "the likely difficulties in managing a class

8   action." Fed. R. Civ. P. Rule 23(b)(3)(A)–(D).  "[C]onsideration of these factors requires the court

9   to focus on the efficiency and economy elements of the class action so that cases allowed under

10  subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis."

11  *Zinser v. Accufix Res. Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) (quotation marks and

12  citation omitted).

13     Plaintiffs submit each of the factors weighs in favor of certification.  First, class treatment

14  is superior in plaintiffs' eyes because there is no indication that any class member seeks individual

15  control of their case, and in any event, individual lawsuits would be inefficient, costly, and could

16  lead to inconsistent verdicts.  Second, plaintiffs are unaware of any parallel litigation raising the

17  claims in this action, so there is no risk that certification would render previously expended

18  judicial resources wasteful.  Third, plaintiffs maintain concentrating the claims in a single forum is

19  appropriate to protect the rights of all class members.  Plaintiffs point out class treatment is

20  particularly appropriate based on the fear that individual lawsuits could invite retaliation by the

21  employer.  Finally, plaintiffs insist classwide treatment is manageable because the same practices

22  and policies applied uniformly to all members of the putative class.[18]

23  _____

24  [18] Plaintiffs' proposed trial plan provides for three phases. Phase I would determine Cogent's
    potential liability for misclassification and overtime. Plaintiffs would present their claims using

25  common evidence, including company documents, testimony from Cogent employees regarding
    corporate policies and practices, and testimony from plaintiffs and class members regarding their

26  workday experiences. Then, if plaintiffs prevail, Phase II would focus on the allocation of
    monetary relief to class members.  Plaintiffs would present representative testimony and statistical

27  analysis of the amount of overtime worked and the value of the damages and waiting time
    penalties. Plaintiffs note the Court could either distribute the aggregate damages pro rata or

28

19

CASE NO. 14-cv-02182-RS

United States District Court
Northern District of California

1    Given the discussion noted above, class treatment is likely to reduce litigation costs and

2    promote efficiency relative to trying each case individually.  As such, Rule 23(b)(3)'s requirement

3    that class resolution be superior is accordingly met.

4    In sum, plaintiffs' have satisfied the applicable burdens under Rule 23.  Their motion for

5    class certification will accordingly be granted.

6    **C. Notice**

7    The notice proposed by plaintiffs contemplates only the FLSA claims.  In light of this

8    order, a new notice will be required to include the Rule 23 class action claims.  The parties shall

9    meet and confer regarding the contents of a joint notice governing the FLSA and Rule 23 claims.

10   On or before twenty-one (21) days from the date of this order, the parties shall submit a proposed

11   joint notice for the Court's consideration.  To guide that process, a few words regarding the FLSA

12   only notice proposed by plaintiffs may be useful.

13   In connection with their FLSA claim, plaintiffs seek a ninety day opt-in period, measured

14   from the date notice is mailed.  Plaintiffs also propose disseminating notice by mail and email,

15   with reminder notices at the end of the opt-in period.  Plaintiffs request an order requiring Cogent

16   to disclose the names, last known home addresses, home and business email addresses, home and

17   cellular telephone numbers, and last four digits of the social security numbers of all potential class

18   members.  Lastly, plaintiffs request that the notice and consent forms be posted for review in

19   Cogent's California offices.

20   Cogent raises a host of complaints.  To begin, Cogent objects to plaintiffs' proposed class

21   definition because some of the employees set to receive notice will have waived their right to

22   participate in a collective action.  Cogent suggests a number of remedies.[19]  Cogent also asserts the

23

24   establish a procedure by which class members may assert individual claims against the fund.
     Lastly, following the damages phase, the case would proceed to Phase III, where the derivative

25   UCL claims would be tried.

26   [19] Specifically, Cogent proposes: (1) the class definition be revised to include only employees
     "who worked over 40 hours in a work week and who have not waived their right to bring class,

27   collective, and representative actions"; (2) the notice include a section specifying that those
     employees who signed arbitration agreements or release agreements containing a class, collective,

28

United States District Court
Northern District of California

CASE NO. 14-cv-02182-RS

United States District Court
Northern District of California

proper start date for determining the composition of the putative class is three years prior to the date plaintiffs actually send the collective action notice—not three years prior to the filing of the complaint (the current date).  Next, Cogent requests the opt-in period be shortened to sixty days, and objects to the posting of the notice and consent forms in the California offices.  Continuing, Cogent objects to plaintiffs being permitted to send out reminder notices, and also proposes deleting paragraph four of the consent form.  Finally, Cogent requests the notice include language informing potential plaintiffs they may need to participate in discovery and trial, will be required to defend the calculation of their overtime, and may be liable for costs and attorneys' fees if Cogent prevails.

To aid the parties in the meet and confer process, the notice presently proposed by plaintiffs has the following pros and cons.  The class definition can remain as stated above.  Given that plaintiffs did not support their request for equitable tolling, the collective action period runs from the date three years prior to the date notice is mailed.  Cogent should provide to plaintiffs the names, last known mailing addresses, business and home email addresses, home and cellular telephone numbers, and last four digits of the social security numbers of all California-based Regional Account Managers, National Account Managers, and Global Account Managers for the relevant period in usable electronic form.  The parties would need to submit an appropriate protective order specifying that potential class members' information is to be used and distributed only for effecting notice of this litigation.  Plaintiffs' request to post the notice and consent forms in Cogent's California offices would not be required.  A ninety day period for opt-in plaintiffs from the date notice is mailed within which to file their consent to join the litigation is reasonable.

---

or representative action waiver may not participate in the collective action;  (3) the bolded statement that employees "may be eligible to file a consent and seek to join the lawsuit even if [they] signed a waiver and release of claims" be revised to include, "provided that such waiver and release of claims did not include a class, collective, or representative action waiver."  Plaintiffs counter that Cogent has not produced a single release signed by a putative class member, and note they do not concede the validity or enforceability of any such releases.  Plaintiffs also note it is Cogent's burden to demonstrate the existence of a valid and relevant arbitration agreement, and point to authority suggesting speculative conflicts do not preclude conditional certification. *See Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003).

Plaintiffs would be permitted to send one reminder notice thirty days prior to the end of the opt-in period.  Any reminder would need to be substantially identical in content to the first notice, but could be identified as a reminder.

On the notice itself, the bolded statement regarding court authorization would need to be revised to read: "This notice and its contents have been authorized by the United States District Court for the Northern District of California.  The Court has taken no position in this case regarding the merits of the plaintiffs' claims or of Cogent's defenses."  On the consent form, plaintiffs would have needed to remove paragraph four.  Cogent's proposed language about discovery and attorneys' fees would not be required.

**D. Motion to Dismiss Plaintiffs Jane LaCap, Tony Trinh, and Bill Chan**

Cogent moves to dismiss plaintiffs Jane LaCap, Tony Trinh, and Bill Chan on the ground they failed to communicate with their counsel, appear for noticed depositions, or otherwise participate in this litigation.  Plaintiffs do not oppose the dismissal of LaCap, Trinh, and Chan. Given the absent plaintiffs have made no effort to prosecute their claims, the motion to dismiss LaCap, Trinh, and Chan will be granted.[20]

## IV. CONCLUSION

The motion for conditional certification of the collective action is granted for the purpose of notification.  Plaintiffs' motion for class certification also is granted.  The parties shall meet and confer regarding the contents of a joint notice, and on or before twenty-one (21) days from the date of this order, submit a proposal to the Court.  Plaintiffs will be appointed as class representatives.  Duckworth, Peters, Lebowitz, Olivier, LLP and Shellist Lazarz Slobin LLP will be appointed as class counsel.  Cogent's motion to dismiss LaCap, Trinh, and Chan is granted.

A further Case Management Conference shall be held on February 4, 2016, at 10:00 a.m.

---

[20] In its brief, Cogent requested fees and costs under Rule 37(d) of the Federal Rules of Civil Procedure, but it withdrew that request at oral argument.  In any event, defendants did not file their sanctions request in a separate motion, and therefore failed to comply with the requisite local rule. *See* Civil L.R. 7–8.

in Courtroom 3, 17th Floor, United States Courthouse, 450 Golden Gate Avenue, San Francisco, California.  The parties shall file a Joint Case Management Statement at least one week prior to the Conference.  Plaintiffs' administrative motion to file under seal exhibits 8 and 17 to the Duckworth declaration is denied.  *See* Dkt. Nos. 49, 56.  Their motion is granted as to exhibits 27, 34, and 49.  Plaintiffs shall file exhibits 8 and 17 in the public record no earlier than 4 days, and no later than 10 days, after the date of this order. *See* Civ. Local Rule 79–5(e)(2).

**IT IS SO ORDERED**.

Dated: January 4, 2016

RICHARD SEEBORG
United States District Judge